1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NICOLE D.,[1]

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,[2]

Defendant.

Case No.: 24-cv-01451-AJB-SBC

**ORDER DENYING PLAINTIFF'S MERITS BRIEF**

**(Doc. No. 9)**

On August 15, 2024, Plaintiff Nicole D. ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying Plaintiff supplemental security income benefits under Title XVI of the Social Security Act (the "Act") and Social Security Disability Insurance under Title II of the Act. (Doc. No. 1.) Presently pending before the Court is

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] Frank Bisignano, the new Commissioner of Social Security as of May 7, 2025, is hereby substituted as the defendant in this matter pursuant to 42 U.S.C. § 405(g).

Plaintiff's Merits Brief. (Doc. No. 9.) The Commissioner filed an opposition (Doc. No. 13), and Plaintiff replied (Doc. No. 14). After a thorough review of the parties' briefs, the administrative record, and applicable law, and for the reasons set forth below, the Court **DENIES** Plaintiff's Merits Brief and **AFFIRMS** the decision of the Commissioner.

## I.    BACKGROUND

Plaintiff, a 44-year-old female, suffers from a combination of physical and mental impairments which she alleges inhibit her from working, thus entitling her to benefits under the Act. (*See* Doc. No. 1; Certified Administrative Record ("AR") 101.)[3] On May 18, 2021, Plaintiff filed applications for Title II Social Security Disability Insurance and Title XVI Supplemental Security Income, alleging disability beginning February 2, 2020. (AR 101–02, 147–48.) Her applications were denied initially on November 19, 2021 (AR 71–102), and upon reconsideration on March 17, 2022. (AR 103–48.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (AR 167–68.) An administrative hearing was held on August 9, 2023. (AR 37–70.) Plaintiff appeared at the hearing with counsel. (*Id.*) Testimony was taken from Plaintiff and a vocational expert ("VE"). (*Id.*)

On August 9, 2023, the ALJ found Plaintiff not under a disability, as defined in the Act, from February 2, 2020, through the date of decision. (AR 16–31.) The ALJ's decision became the final decision of the Commissioner on June 12, 2024, when the Appeals Council denied Plaintiff's request for review. (AR 1–6.) This timely civil action follows.

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

---

[3] The Court adopts the parties' pagination of the AR. All other record citations are to the page numbers assigned by the Courts CM/ECF system.

February 2, 2020, the alleged date of onset. (AR 19.) At step two, the ALJ found that Plaintiff had the following severe impairments: right rotator cuff tear status-post surgery, lumbar spine degenerative disc disease status-post fusion, lumbar post-laminectomy syndrome, bilateral sacroiliac joint arthritis, spinal scoliosis, depressive disorder, and anxiety disorder. (AR 20.) The ALJ found that "[t]he medical evidence of record contains diagnoses by acceptable medical sources of the above listed impairments," and "[t]he evidence substantiates that each of these impairments, singly or in combination, has imposed at least more-than-minimal limitations on the [Plaintiff's] ability to perform basic work-related activities for at least twelve consecutive months, thus meeting the definition of "severe" under the regulations." (AR 20.) Accordingly, the ALJ found that Plaintiff could proceed through step two of the sequential process. (*Id.*)

At step three, the ALJ noted that neither Plaintiff nor her counsel "advance[d] any evidence to suggest that her impairments have ever, either singly or in combination, met or medically equaled the requirements of a listed impairment on a longitudinal basis." (*Id.*) Regardless, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 20–21.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform sedentary work" with the following limitations:

> Petitioner requires a sit/stand/stretch option, allowing her to shift from a seated position to a standing position and/or to stretch at intervals of approximately 30 minutes, provided she does not leave the workstation and the shifting of positions results in her being off-task no more than 1–2 minutes with each position shift; she is incapable of climbing ladders, ropes, and scaffolds and is incapable of kneeling or crawling; she is capable of occasionally climbing ramps and stairs and occasionally balancing, stooping, and crouching; she is incapable of reaching above shoulder level but is capable of frequently reaching in all other directions with the dominant right upper extremity; she is capable of frequently pushing and/or pulling with the bilateral lower and upper extremities; she is capable of no more than occasional exposure to extreme temperatures, vibrations, and slippery or uneven surfaces; she is able to perform work that does not require driving as

a part of work duties or require more than occasional work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; she is able to understand, remember, and carry out simple and detailed but uninvolved written and oral instructions and tasks and work at a consistent pace throughout the workday at such tasks but not at a production rate pace where each task must be completed within a strict time deadline, such as work on a conveyor belt or assembly line, or within high quota demands, such as work with an hourly quota requirement; she is able to make occasional workplace decisions involving a few concrete variables in or from standardized situations; she is able to sustain concentration and persist at workplace tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday; and she is capable of occasional interaction with the general public, co-workers, and supervisors but is incapable of performing tasks requiring conflict resolution, requiring her to direct the work of others or persuade others, or requiring her to work jointly or cooperatively with a co-worker or co-workers on tandem tasks or in a team environment.

(AR at 23.)

For purposes of his step four determination, the ALJ determined that Plaintiff's past positions as a merchant patroller, manager trainee, event planner, and compliance officer met the requisite durational, earnings, and recency requirements to be considered past relevant work. (AR 28.) At the hearing, the ALJ asked the VE whether a hypothetical individual with same age, education, and work experience as Plaintiff, and who would be subject to the same RFC as described above, would be able to perform Plaintiff's past relevant work. (AR 29.) The VE stated that a person with Plaintiff's RFC would not be able to perform any of the past relevant work. (*Id.*) The ALJ found the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"), the evidence of record, and Plaintiff's testimony. (*Id.*) Therefore, the ALJ found that Plaintiff was unable to perform past relevant work. (*Id.*)

At step five, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 30.) At the hearing, the ALJ asked the VE whether a hypothetical person with Plaintiff's age, education, work experience, and RFC could perform the requirements of occupations that existed in significant numbers in the national economy. (AR 29–30, The VE testified

4

that Plaintiff would be able to perform the requirements of an address clerk, final assembler, or table worker, and all those positions existed in significant numbers in the national economy. (AR 30.) Relying on the VE's testimony, and based on the foregoing analysis, the ALJ concluded that Plaintiff was not disabled under the Act. (AR 17–30.)

## III.  STANDARD OF REVIEW

### A.  Standard of Review of Commissioner's Final Decision

Under 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's final decision "must be affirmed" if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Batson v. Comm'r Social Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation omitted). The Court must "consider the entire record as a whole" and weigh adverse as well as supporting evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). However, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *See id.* Furthermore, the Commissioner's decision, even if erroneous, may not be reversed if the error is harmless. *Pruett v. Colvin*, 85 F. Supp. 3d 1152, 1157 (N.D. Cal. 2015). An error is harmless when it is inconsequential to the ultimate determination that a claimant is not disabled. *See Stout v. Comm'r Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### B.  Determination of Disability

For the purposes of the Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant meets this definition, the ALJ employs a five-step sequential evaluation. 20 C.F.R. § 404.1520(a). If the ALJ determines that a claimant is either disabled or not disabled at any step in the process, the ALJ does not continue on to the

next step. *See* 20 C.F.R. § 404.1520(a); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

In brief, the ALJ considers whether the claimant is disabled by determining: (1) whether the claimant is "doing substantial gainful activity;" (2) whether the claimant has a "severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe" and that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, the claimant can still do his or her "past relevant work;" and (5) whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(i)-(v). Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC. *See* 20 C.F.R. § 404.1520(e); *Bray*, 554 F.3d at 1222–23; *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). The burden of proof is on the claimant at steps one through four but shifts to the Commissioner at step five. *Bray*, 554 F.3d at 1222.

## IV.    PLAINTIFF'S CLAIMS OF ERROR

1.    The ALJ erred by failing to give clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. (Doc. No. 9 at 12.)

2.    The ALJ erred in his RFC determination because the RFC is not supported by substantial evidence. (*Id.* at 18.)

3.    The ALJ failed to meet his burden at step five because: (1) the position of Address Clerk (DOT #209.587-010) is a job that the ALJ "may not cite" without the requisite findings; (2) Table Worker (DOT #739.687-182) requires the worker to use a conveyor belt, which the RFC specifically prohibits; and (3) the RFC contains internal inconsistencies that the ALJ did not resolve.

## V.    DISCUSSION

### A.    Plaintiff's Subjective Symptom Testimony

Plaintiff contends the ALJ erred by failing to provide clear and convincing reasons for discounting her subjective symptom testimony. (Doc. No. 9 at 12.) She argues that a

6

cursory discussion is insufficient and that the ALJ failed to adequately explain why her statements were not credited. (*Id.* at 13.) In response, the Commissioner maintains that the ALJ properly found Plaintiff's allegations inconsistent with the overall evidence of record and that the credibility determination was supported by specific citations to medical records and expert testimony. (Doc. No. 13 at 2.) The Court finds no error.

In evaluating a claimant's subjective symptom testimony, an ALJ must perform a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Id.* (internal quotation omitted); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: [t]he clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation omitted). The ALJ did not err in evaluating Plaintiff's subjective symptom testimony as he provided clear and convincing reasons for rejecting her statements.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce [Plaintiff's] alleged symptoms." (AR 25.) However, the ALJ found Plaintiff's statements were not fully credible because Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

Under Ninth Circuit precedent, "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."

*Cindy T. v. Kijakazi*, No. 21-CV-00005-JLB, 2022 WL 16633010, at *11–12 (S.D. Cal. Sept. 23, 2022) (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)); *see also Revels*, 874 F.3d at 667 (finding that "inconsistent daily activities may provide a justification for rejecting symptom testimony"); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (stating that a contradiction between a claimant's daily activities and his or her testimony is a ground for forming the basis of an adverse credibility determination). "In other words, a court may consider inconsistencies between a claimant's words and her actions." *Cindy T.*, 2022 WL 16633010, at *11; *see also Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (finding the ALJ rationally determined the claimant's assertion that he was "confined primarily to resting and reclining about his own home" was inconsistent with his testimony that "he remains capable of caring for all his own personal needs, the performance of his own routine household maintenance and shopping chores, riding public transportation, and driving his own automobile"). Daily activities may also "be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). To meet this standard, the ALJ "must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom allegations. (*See* AR 24–28.) Plaintiff alleged she was unable to work due to pain, particularly in her back, and reported limitations such as difficulty standing for more than ten minutes, walking even a few blocks, lifting objects due to shoulder pain, and needing to rest every 30 to 60 minutes. (AR 24, 43, 378–80.) The ALJ acknowledged these statements and incorporated Plaintiff's limitations into the RFC, finding she could perform a restricted range of sedentary work. (AR 23.) However, the ALJ reasonably determined that the remainder of Plaintiff's allegations were inconsistent with the medical and other evidence in the record. (AR at 24–28.)

8

The ALJ first cited Plaintiff's own reported activities, which demonstrated that she was "less limited than she alleged." (AR 25.) Plaintiff claimed disabling pain that interfered with lifting, sitting, and mobility. (AR 25, 76, 78–79, 104, 111). However, the ALJ found these assertions inconsistent with Plaintiff's statements related to her daily activities. The ALJ stated the following:

> Despite her allegations, the claimant admitted in her disability filings that she stated that she lives with her young child in a house. She takes care of her child and takes her child to school. She makes meals, grocery shops twice a week, drives a car, and performs some chores (Exhibits 4E, 7E). The claimant's admissions and reported activities demonstrate the claimant was and is less limited than she alleged."

(AR 25.) The ALJ also noted that Plaintiff wore a brace, but did not use a cane. (*Id.*)

Such inconsistencies with activities of daily living constitute a proper basis to reject Plaintiff's subjective symptom testimony. *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

The ALJ also found that Plaintiff's treatment records reflected progress and symptom relief. The ALJ noted that Plaintiff made progress through physical therapy and her pain was well controlled. (AR 26.) She was noted to be very active at that time and she did not receive significant subsequent treatment for her right shoulder following therapy. (*Id.*) *See Degen v. Berryhill*, 725 F. App'x 550, 553 (9th Cir. 2018) (noting that improvement after receiving treatment can undercut testimony regarding the severity of symptoms); *Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020) (finding that occasional progress during treatment, and improvement while taking certain medications, can be reasons for rejecting evidence of marked limitations). As evidenced in the Plaintiff's medical records, providers reported that Plaintiff was "making progress," had "appropriate strength" with "minimal weakness," and displayed "smooth joint motion." (AR 1307–08.) She was "progressing" in physical therapy, her pain remained "well controlled," and she was "doing well managing her young daughter." (AR 1309.) The ALJ appropriately

9

considered these findings in discounting Plaintiff's subjective symptom testimony. *See Smartt v. Kijakzazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.").

In sum, the ALJ provided clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective pain testimony. Accordingly, the ALJ did not err in evaluating Plaintiff's subjective symptom testimony.

## B.    The ALJ's RFC Determination

Plaintiff argues the "RFC is nothing more than the ALJ's own independent finding, as there is no medical opinion to support the ALJ's unwieldy RFC finding." (Doc. No. 9 at 20.) In response, the Commissioner argues the RFC is supported by substantial evidence in the form of treatment records, daily activity reports, and clinical findings, even in the absence of a medical opinion endorsing the RFC. (Doc. No. 13 at 8.)

A claimant's RFC is the most a claimant can do despite her limitations and must be based on "all of the relevant medical and other evidence" in the record, including treatment records, medical opinions, and the claimant's own statements. 20 C.F.R. § 404.1545(a)(3). Although an ALJ may not render his or her own medical opinion and is not empowered to independently assess clinical findings, *see, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999), the ALJ is responsible for resolving conflicts in the evidence and for translating the record into a function-by-function assessment of what the claimant can do. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). In addition, the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) So long as the RFC reasonably reflects the evidence and the ALJ's interpretation is rational, it must be upheld—even where the evidence could support more than one conclusion. *Leonard v. Colvin*, 633 F. App'x 362, 365 (9th Cir. 2015).

Here, the ALJ's RFC finding is supported by substantial evidence and reflects a reasonable interpretation of the record. (28–29.) Plaintiff argues the RFC is flawed because

it lacks a supporting medical opinion and includes internal inconsistencies—however, she also acknowledges that the "absence of a medical opinion isn't necessarily fatal" so long as the RFF is "supported by substantial evidence". (Doc. No. 9 at 18–19.) Plaintiff's criticisms do not undermine the RFC's validity. The ALJ evaluated a broad range of evidence—including treatment records, physical therapy notes, and Plaintiff's reported activities of daily living—which demonstrated that Plaintiff experienced improvement with treatment, maintained appropriate strength and minimal weakness on examination, and was able to care for her young child, perform chores, grocery shop, and drive. (AR 25–26, 1307–09.) These findings are sufficient to support the functional limitations assessed in the RFC. *See Leonard*, 633 F. App'x at 362.

Plaintiff also contends the RFC is internally inconsistent because it states she can be off task for one to two minutes every 30 minutes due to a sit/stand/stretch option while also stating she can concentrate and persist for up to two hours at a time. (Doc. No. 9 at 18.) This reading misconstrues the purpose of the off-task limitation. The ALJ explained that the brief off-task period was not due to cognitive issues but rather to allow for physical posture shifts, which do not inherently disrupt concentration. (AR 23.) The ALJ clarified this point during the hearing—the VE confirmed understanding and did not view these provisions as incompatible. (AR 68–69.) When the RFC is read as a whole, it is logically and functionally coherent.

Plaintiff's broader criticism—that the ALJ substituted lay opinion in the absence of a medical source—is unavailing. (Doc. No. 9 at 18–19.) The ALJ appropriately interpreted and synthesized medical records and other evidence to craft a function-by-function RFC, as required by 20 C.F.R. § 404.1545(a)(3). While reasonable minds might reach different conclusions, the ALJ's decision is supported by relevant evidence a reasonable person might accept as adequate—thus meeting the substantial evidence standard. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Because the RFC is reasonably derived from the record and supported by substantial evidence, it must be upheld.

11

24-cv-01451-AJB-SBC

### C.    The ALJ's Step Five Finding

Finally, Plaintiff argues the ALJ's finding at step five is not supported by substantial evidence because the VE identified jobs which conflict with her RFC. (Doc. No. 9 at 6.) She contends that the ALJ improperly relied on the Address Clerk position without obtaining additional evidence as required by Emergency Message EM-24027, and that the Table Worker job conflicts with the RFC's restriction against production rate pace work, such as conveyor belt tasks. (*Id.* at 7) Plaintiff also claims the RFC is internally inconsistent, pointing to a conflict between brief off-task periods every 30 minutes and the ability to sustain concentration for up to two hours. (*Id.*) In response, the Commissioner argues that even if the Address Clerk position is disregarded, the remaining 65,000 jobs available as Final Assembler and Table Worker are sufficient to meet the step five burden. (Doc. No. 13 at 6.) The Commissioner maintains that the VE's testimony was properly based on professional experience, addressed any deviations from the DOT, and that the RFC is consistent when read as a whole, with brief off-task periods tied to position changes. (*Id.* at 7.) Because the ALJ's hypothetical included all credible limitations, the Commissioner asserts the ALJ properly relied on the VE's testimony in finding Plaintiff not disabled. (*Id.* at 8.)

To determine whether a claimant can perform work that exists in significant numbers in the national economy, an ALJ must rely on a properly supported RFC assessment. The RFC must reflect "all of the relevant medical and other evidence," including descriptions of limitations that are not considered severe. 20 C.F.R. § 404.1545(a)(3); *Leonard*, 633 F. App'x at 365. Without an adequate RFC, any conclusion at step five lacks the necessary foundation in substantial evidence. *See Jackson-Young v. Colvin*, 2014 WL 1599467, at *5–6 (9th Cir. Apr. 21, 2014). As discussed above, the Court finds the ALJ imposed a properly supported RFC.

At step five, the burden shifts to the Commissioner to show that the claimant can perform substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; *see also Blodgett v. Comm'r of Soc. Sec. Admin.*, 534 F. App'x 608, 611 (9th Cir. 2013)

(At step five, "the burden of proof shifts to the Secretary to show that the claimant can perform other types of work that exist in the national economy."); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992) (Once the claimant "establishes a prima facie case of disability . . . [t]he burden then shifts to the Secretary to show she can do other sorts of jobs available in the national economy."). To meet this burden, the ALJ may either call a VE or rely on the Medical-Vocational Guidelines. *Tackett*, 180 F.3d at 1100.

The ALJ can call upon a vocational expert to testify as to: "(1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Id.* at 1101. When considering the VE's testimony, the ALJ poses hypothetical questions that set out all of the claimant's impairments for the VE's consideration. While an ALJ is not required to restate the RFC verbatim, the hypothetical must accurately reflect its substance. *See Stubbs-Danielson*, 539 F.3d at 1174 (holding that a hypothetical limiting the claimant to "simple tasks" adequately captured restrictions related to concentration, persistence, or pace). Where an ALJ's decision at step five lacks a proper RFC foundation or fails to include all supported limitations in the VE hypothetical, the decision is not supported by substantial evidence and must be remanded. *Jackson-Young*, 2014 WL 1599467 at *4–6.

Here, the ALJ posed a hypothetical that accurately captured Plaintiff's RFC, including restrictions against production rate pace and the need for a sit/stand/stretch option. (AR 24–28.) The VE testified that Plaintiff could perform the work of Addresser, Final Assembler, and Table Worker. (*Id.*) Although Plaintiff contends the Addresser job should be excluded due to Emergency Message EM-24027, the remaining two occupations alone—Final Assembler and Table Worker—represent 65,000 jobs in the national economy, which is sufficient to meet the Ninth Circuit's definition of "significant numbers." *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding 25,000 national jobs in the national economy "a close call" but significant); *see also Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (64,000 nationwide jobs significant); *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (622,000 nationwide jobs

significant); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (125,000 nationwide jobs significant); *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012) (1,680 nationwide jobs insignificant).[4]

Plaintiff also argues the Table Worker job conflicts with her RFC due to its association with conveyor belt work. (Doc. No. 9 at 6.)  However, the ALJ specifically asked the VE to explain the basis for any opinion not fully addressed by the DOT. (AR 63–66.) The VE responded that any deviations were based on ten years of experience in job placement and labor market analysis, which courts have recognized as a valid foundation for substantial evidence. (AR 66–68.) *See Blodgett,* 534 F. App'x at 608. The ALJ reasonably found the VE's explanation sufficient and cited that testimony in support of his decision. *See Jackson-Young*, 2014 WL 1599467 at *4–6 (accepting VE testimony where the record supported the job findings despite DOT silence or limitations).

Finally, Plaintiff's claim that the RFC is internally inconsistent—because it allows for 1–2 minutes off-task every 30 minutes while also stating Plaintiff can concentrate for up to two hours—is unpersuasive. (Doc. No. 9.) When read as a whole, the RFC makes clear that the brief off-task period is related to postural adjustments during the workday, not cognitive lapses. (AR 50–54.) The VE explicitly understood this limitation, and the ALJ clarified it during the hearing. (AR 60–64.) As such, there is no meaningful inconsistency between the off-task provision and the ability to sustain concentration, and the hypothetical posed to the VE remains consistent with the RFC. (*Id.*)

Because the ALJ incorporated all supported limitations into the RFC and hypothetical and relied on VE testimony grounded in accepted methodology and experience, the step five finding is supported by substantial evidence. Remand is not required.

---

[4] In reply, Plaintiff argues that the ALJ, rather than the Court, must be the one to determine whether 65,000 jobs in the national economy is enough to be considered significant. (*See* Doc. No. 14 at 2.) Plaintiff cites no authority to support this argument. The Court finds the argument unavailing.

## VI.   CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's merits brief and **AFFIRMS** the decision of the Commissioner. The Clerk of Court is directed to enter judgment in favor of the Commissioner and against Plaintiff, and to dismiss this action with prejudice.

**IT IS SO ORDERED.**

Dated:  September 23, 2025

Hon. Anthony J. Battaglia
United States District Judge

24-cv-01451-AJB-SBC